UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D EXTER A NDERSON,

    Plaintiff,

v.

B. T RUE, A RDETTA M OODY, M ATTHEW
B URNETT, and A NDRE M CC LATCHEY,

    Defendants.

Case No. 15-cv-11703

U NITED S TATES D ISTRICT C OURT J UDGE
G ERSHWIN A. D RAIN

U NITED S TATES M AGISTRATE J UDGE
D AVID R. G RAND

## O PINION AND O RDER A CCEPTING R EPORT AND R ECOMMENDATION [66] AND G RANTING D EFENDANTS' M OTION FOR S UMMARY J UDGMENT [46]

### I. I NTRODUCTION

Dexter Anderson ("Mr. Anderson" or "Plaintiff"), an incarcerated person, brought this *Bivens* action alleging that B. True, Ardetta Moody, Matthew Burnett, and Andre McClatchey (collectively "Defendants") unlawfully retaliated against the Plaintiff for exercising his First Amendment rights. *See* Dkt. No. 1. All of the Defendants were employed by the Federal Bureau of Prisons ("BOP"). *Id.* Pending before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 46. This matter was referred to Magistrate Judge David R. Grand, who issued a Report and Recommendation urging the Court to grant the Defendants' Motion for Summary Judgment. Dkt. No. 66. Mr. Anderson objects to the Magistrate Judge Grand's

Report and Recommendation. Dkt. No. 69. For the reasons stated below, the Court **ACCEPTS** Magistrate Judge Grand's Report and Recommendation [66] and **GRANTS** Defendant's Motion for Summary Judgment [46].

## II. FACTUAL BACKGROUND

The events giving rise to this claim began in June of 2013. Dkt. No. 1, p. 5 (Pg. ID 5). At that time, Plaintiff was housed at the Federal Correctional Institute in Milan, Michigan ("FCI Milan"), where the Defendants worked. In early June of 2013, Plaintiff requested his then-Unit Manager, Defendant Moody to verify his inmate account and to complete documentation, which would enable the Plaintiff to apply for informa pauperis ("IFP") status. *Id*. According to the Plaintiff, Moody refused. *Id*. After consulting with Moody's supervisory, Warden B. True, Plaintiff contacted the Unit Secretary to get the documents signed and notarized. *Id*. The Unit Secretary, however, informed the Plaintiff that he could not notarize the forms without Moody's approval.

On June 7, 2013, Plaintiff met with Defendant Moody. *Id*. Moody accused the Plaintiff of trying to "circumvent the system." *Id.* Plaintiff alleges that Moody became disrespectful and hostile, then threatened to send the Plaintiff to the Special Housing Unit (SHU). *Id.* Shortly after the meeting with Defendant Moody, Plaintiff filed a Request for Administrative Remedy, also known as a B-9, which is a formal grievance. *Id.*, p. 6 (Pg. ID 6). In the B-9, Plaintiff complained about Defendant

Moody's "misconduct" and stated that, "[a]ny retaliation based on the filing of this Staff Misconduct complaint … will result in the filing of a Civil Lawsuit again those individuals." Dkt. No. 1, p. 36 (Pg. ID 36). On August 8, 2013, Plaintiff received a formal response finding "no evidence of staff misconduct." *Id.*, p. 37 (Pg. ID 37).

On January 27, 2014, more than six months later, the BOP issued a memo soliciting inmates to be relocated to a Federal Correctional Institute located in Hazelton, West Virginia ("FCI Hazelton"). *Id.*, pp. 7–8 (Pg. ID 7–8). The memo sought medium or low security prisoners with at least one year of clear conduct and a release date after March 17, 2016. *Id.* In response to the memo, Defendant Moody suggested the Plaintiff for transfer. *Id.*, p. 40 (Pg. ID 40). However, Defendant Burnett, Plaintiff's case manager, explained that Mr. Anderson was not a good fit because he was a low security inmate.

On February 25, 2014, the BOP issued another memo, this time soliciting inmates to be relocated to a Federal Correctional Institute located in Danbury, Connecticut ("FCI Danbury"). *Id.*, p. 41 (Pg. ID 41). The memo sought low security prisoners with at least one year of clear conduct and a release date after October 15, 2015. *Id.* Again, Defendant Moody suggested the Plaintiff for transfer. Four months later, Mr. Anderson learned that he would be transferred to FCI Danbury. Dkt. No. 1-1, p. 6 (Pg. ID 56).

Mr. Anderson filed the present lawsuit on May 11, 2015, alleging that the Defendants violated his First Amendment rights by transferring him from FCI Milan to FCI Danbury. According to Mr. Anderson, placement in FCI Danbury is less desirable because: (1) it is farther from his release residence of Wisconsin and too far for his family to visit; (2) the transfer has caused him great emotional and mental distress for fear of being retaliated against again; (3) FCI Danbury does not offer ceramics and other classes that Mr. Anderson needs to "cope with the stress of being incarcerated;" and (4) because Mr. Anderson lost his job, which allowed him to help suicidal and mentally challenged inmates. Dkt. No. 69, pp. 5–6 (Pg. ID 837–38). Mr. Anderson seeks compensatory and punitive damages from each Defendant. Pending before the Court is Defendants' Motion for Summary Judgment and Magistrate Judge Grand's Report and Recommendation, which Mr. Anderson objects to.

### III. LEGAL STANDARD

A district court performs de novo review of timely and specific objections to a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2)–(3). Additionally, a district court may adopt, reject, or amend the portions of the report and recommendation to which no party properly objects. *See* FED. R. CIV. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. FIRST AMENDMENT RETALIATION AND QUALIFIED IMMUNITY

"A [First Amendment] retaliation claim essentially entails three elements: (1) the plaintiff engaged in *protected conduct*; (2) an *adverse action* was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a *causal connection* between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (emphasis added). However, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added).

## V. DISCUSSION OF PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Defendants argue that Summary Judgment is proper on qualified immunity grounds because at the time of the allegedly unlawful conduct, it was not "clearly established" that Anderson's transfer was unlawful. In his November 30, 2016 Report and Recommendation, Magistrate Judge Grand recommended the Court to grant Defendants' Motion for Summary Judge because it was not *clearly established* that transferring Anderson was an *adverse action* within the meaning of relevant First Amendment jurisprudence. Dkt. No. 66, p. 8 (Pg. ID 815) (emphasis added).

As best as the Court can tell, Plaintiff objects to the Report and Recommendation on five grounds.

*First*, Anderson seems to argue that he engaged in protected conduct pursuant to the First Amendment. *See* Dkt. No. 69, pp. 2–4 (Pg. ID 834–36). That objection, however, is immaterial because Magistrate Judge Grand assumed for the purposes of his analysis that the Plaintiff engaged in protected conduct. Dkt. No. 66, p. 8 (Pg. ID 815) ("Thus, for purposes of the analysis that follows, the Court will assume that Anderson's grievance with respect to Moody constitutes protected speech.").

*Second*, the Plaintiff argues that a retaliatory transfer constitutes adverse action. This argument, however, misses the critical issue in Mr. Anderson's case. The Defendants moved for summary judgment on qualified immunity grounds. Under qualified immunity, government officials—such as BOP employees—are immune from civil liability unless their conduct *violates a clearly established constitutional right*. *See Harlow*, 457 U.S. 800, 818 (1982) (emphasis added). A clearly established constitutional right exists when a reasonable officer would know that his/her conduct was unlawful. *Id*. Where binding case law is inconsistent on an issue, the constitutional right is not clearly established and officers can be entitled qualified immunity. *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 972 (6th Cir. 2004). Therefore, in this case, the critical issue is not whether the retaliatory transfer

was an adverse action, but rather, whether it was *clearly established* that such a transfer was unlawful.

Here, case law is inconsistent about whether a retaliatory inmate transfer resulting in loss of visitation and prison programs, amounts to adverse action. Mr. Anderson admits this fact. *See* Dkt. No. 69, p. 6 (Pg. ID 838). According to Mr. Anderson, "it is true that the many cases in the Sixth Circuit can sway either way in the finding of an adverse action." *Id.* Mr. Anderson continues and admits that the Sixth Circuit has not decided whether transferring a federal prisoner over 500 miles from his release residence, resulting in the loss of visitation and other foreseeable negative consequences, amounts to adverse action. *Id.* This admission is fatal to Mr. Anderson because it demonstrates that it was not clearly established that Mr. Anderson's transfer was unlawful. Therefore, because a reasonable officer would not know that Mr. Anderson's transfer was unlawful, the Defendants are entitled qualified immunity.

Mr. Anderson relies on two cases: *Siggers-El v. Barlow*, 412 F. 3d 693 (6th Cir. 2004), and *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009). However, the facts in *Siggers-El* are distinguishable and the holding in *Pasley* is contradicted by another Sixth Circuit case.

*Siggers-El* involved an inmate who was transferred for exercising his First Amendment rights. Siggers-El was transferred over seventy miles, to a remote

-7-

prison. *Siggers-El*, 412 F. 3d at 698–99. As a result of the transfer, Siggers-El lost his high-paying job that he needed to pay his attorney and the transfer made it more difficult for his attorney to visit and represent him. *Id*. The Sixth Circuit found that Siggers-El's transfer constituted adverse action for the purposes of his retaliation claim. *Id*. at 702. Importantly, the Sixth Circuit based its holding on Siggers-El's access to court. The Court explained:

> In this case, however, the transfer would deter a person of ordinary firmness from engaging in protected conduct, since here, the Defendant was not only transferred, *but also suffered a number of foreseeable consequences that inhibited the Plaintiff's ability to access the courts*. As a result of the transfer, the Plaintiff not only lost his high paying job that he needed in order to pay his attorney, but the transfer also made it more difficult for his attorney to visit with or represent him because he was moved further away from her.

*Id*. (emphasis added).

Mr. Anderson admits that his case is distinguishable from *Siggers-El* on the basis of access to courts, because Mr. Anderson "does not claim to have lost a high paying job that he used to pay his attorney nor does [Mr. Anderson] claim to now have 'limited access' to his attorney[.]" Dkt. No. 61, p. 14 (Pg. ID 639). Despite those distinguishing facts, Mr. Anderson argues that his case is similar to *Siggers-El* because he suffered "foreseeable negative consequences." *Id. See also* Dkt. No. 69, p. 5 (Pg. ID 837). That argument, however, fails because it misstates the holding of *Siggers-El*. *Siggers-El* did not hold that *any* foreseeable negative consequences give rise to an adverse action. Rather, *Siggers-El* focused on the "foreseeable

-8-

consequences that inhibited access to courts." *Siggers-El*, 412 F.3d at 702. Therefore, because Mr. Anderson's transfer did not limit his access to courts, and because the *Siggers-El* holding was limited to foreseeable consequences that inhibited access to court, Mr. Anderson's reliance on *Siggers-El* is misplaced.

Next, Mr. Anderson cites *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009). Pasley alleged that a prison employee threatened to transfer him such that he would lose his job and be too far for his family to visit him. *Id*. at 983. Before serving Pasley's complaint on the defendant, the district court dismissed the prisoner's First Amendment retaliation claim. *Id*. at 986. The Sixth Circuit vacated the district court's decision, holding that because of the low requirement for surviving dismissal, Pasley's allegations could state a plausible retaliation claim. The *Pasley* court explained that, "[a]lthough Pasley has not made an effective argument for First Amendment retaliation either in his original complaint or his brief to this court, the facts alleged in Pasley's complaint arguably contain the elements of such a claim." *Id*. Mr. Anderson cites *Pasley*, then argues that, "[i]f a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)." Dkt. Bo. 69, p. 7 (Pg. ID 839). Mr. Anderson's conclusion is flawed because it misstates the holding of *Pasley* and confuses the critical issue in this case.

Turning back to *Pasley*, it is important for Mr. Anderson to realize that *Pasley* involved judicial dismissal of a complaint and not a motion for summary judgment. The distinction between the two is vital. The requirements to survive dismissal are relatively low. *See* 28 U.S.C. §1915A (stating that courts shall dismiss prisoner complaints against the government that are frivolous, malicious or that fail to state a claim upon which relief may be granted). On the other hand, the standard to survive summary judgment is more burdensome. *See* Fed. R. Civ. Pro. 56(c) (directing that summary judgment shall be granted if there is no genuine issue of material fact). Surviving dismissal merely requires proper pleading. Surviving summary judgment requires a substantive factual inquiry. With those principles in mind, surviving dismissal does not mean a party will survive summary judgment. The *Pasley* Court makes this explicit. *See Pasley*, 345 F. App'x 981, 986 (6th Cir. 2009) ("Regardless of whether *Pasley* can ultimately prevail on his claim, or even survive summary judgment, Pasley's pleading meets the low requirements for surviving dismissal."). Therefore, when Mr. Anderson cites *Pasley*, but argues summary judgment, he erroneously conflates dismissal with summary judgment.

Next, even assuming that the Mr. Anderson could establish a constitutional violation—that is not the dispositive issue in this case. The dispositive issue is whether the Defendants are shielded from liability because their alleged violation was not *clearly established* by case law. *See Harlow*, 457 U.S. 800, 818 (1982). In

this case, it is true that *Pasley*, an unpublished case, suggests that under certain conditions, a retaliatory transfer resulting in the loss of visitation could be considered adverse action. Nevertheless, *Friedmann v. Corrections Corp. of America*, 11 Fed. App'x 467 (2001), another unpublished Sixth Circuit case, contradicts *Pasley*. *Friedmann* held that a retaliatory transfer to a location "farther away from those who visited [the plaintiff]" and to an institution that "did not offer the programs in which [the plaintiff] had previously participated … are not sufficient to support a showing of adverse action for the purposes of a retaliation claim." *Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001). *Friedmann* is thus at odds with *Pasley*. Therefore, because the case law is inconsistent, it cannot be said that it was *clearly established* that Mr. Anderson's transfer was unlawful. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

*Third*, Mr. Anderson argues that, the Defendants were on notice that their conduct was unconstitutional. Mr. Anderson cites *Hope v. Pelzer*, 536 U.S. 730, 731 (2002), which states "officials can be on notice that their conduct violates established law even in novel factual situations." Mr. Anderson argues that the Defendants were put on notice because, "Anderson informed Burnett that his transfer was based on retaliation and would be a violation of his Constitutional rights if the transfer

-11-

proceeded." Dkt. No. 69, p. 8 (Pg. ID 840). Although novel, Anderson's argument falls short of the standard articulated in *Hope*. *Hope* continued to explain that previous cases must not be "fundamentally similar", but in "light of pre-existing law the unlawfulness must be apparent". *Hope*, 536 U.S. 730, 739 (2002). Again, in this case, two different Sixth Circuit panels have come out differently on the issue presented. Therefore, because jurists within the circuit disagree on the same issue the pre-existing law is inconsistent and the unlawfulness is no apparent. Thus, despite Mr. Anderson's warning, there was not sufficient notice to the officers that their conduct violated the law. Mr. Anderson's second and third objections are insufficient to deny the Defendants qualified immunity.

*Fourth*, Mr. Anderson briefly argues that the Magistrate Judge defined Mr. Anderson's rights too narrowly and defined qualified immunity too broadly. Dkt. No. 69, p. 8 (Pg. ID 840). The Court disagrees. In determining whether a right was clearly established, courts are instructed not to define the right at a high level of generality, thereby narrowly tailoring the facts to invariably confer qualified immunity. *See Myers v. Potter*, 422 F.3d 347, 356 (6th Cir. 2005). In this case the Magistrate Judge discussed that, "the salient question is whether it was clearly established at the time of Anderson's transfer that it was unlawful to transfer him between two prisons of the same security classification for having engaged in protected conduct." Dkt. No. 66, p. 11 (Pg. ID 818). The Magistrate Judge then

considered whether being transferred far away from visitors to a facility that did not offer the same programs was considered adverse action. *Id.*, p. 14 (Pg. ID 821). Accordingly, the Magistrate Judge defined Mr. Anderson's rights at the appropriate level of generality. Furthermore, the Magistrate Judge recited the law of qualified immunity correctly. Therefore, Mr. Anderson's fourth objection fails.

*Fifth*, Mr. Anderson argues that this Court "has decided previously that a factual dispute does exist and summary judgment should fail." Dkt. No. 69, p. 10 (Pg. ID 842). Mr. Anderson is incorrect and again confuses the standard required for summary judgment.

Mr. Anderson refers to a May 5, 2016 order issued by the Court. *See* Dkt. No. 40. On May 5, 2016, the Court accepted Magistrate Judge Grand's Report and Recommendation to deny Mr. Anderson's Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citations omitted). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

In Mr. Anderson's Motion for Judgment on the Pleadings, he argued that the Defendants' denials in their Answer were insufficient to create a genuine issue of material fact under Fed. R. Civ. P. 56. On that basis, Mr. Anderson argued that he was entitled to judgment on the pleadings. Dkt. No. 33, p. 3–4 (Pg. ID No. 264–65). The Court rejected that argument and explained that "Plaintiff has not brought a motion for summary judgment under Fed. R. Civ. P. 56. Plaintiff moved for judgment on the pleadings under Fed. R. Civ. P. 12(c)." Dkt. No. 40, p. 4 (Pg. ID 423). The Court continued to explain that, "[w]hile a Rule 56 motion for summary judgment requires more than a mere denial of the adverse party's pleading, a Rule 12 motion for judgment on the pleadings require the Court to accept the non-moving party's denials as truth." *Id*. Therefore, the Defendants' denials of Plaintiff's allegation were sufficient, at that stage, to create issues of fact to survive a motion for judgment on the pleading. The Court <u>did not</u> hold that summary judgment, in either party's favor, should fail. Mr. Anderson's fifth objection, therefore, incorrectly characterized the Court's prior order.

## V. CONCLUSION

Mr. Anderson's objections confuse issues or misstate the law. For the preceeding reasons the Court **ACCEPTS** Magistrate Judge Grand's November 30, 2016 Report and Recommendation over Mr. Anderson's objections [66]. Defendants' Motion for Summary Judgment is **GRANTED** [46].

-14-

**SO ORDERED.**

Dated: March 20, 2017

Detroit, MI

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 20, 2017, by electronic and/or ordinary mail.

/s/Tanya Bankston
Case Manager, (313) 234-5213